IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ADIDAS AMERICA, INC. and
ADIDAS AG,

                  Plaintiffs/ Counter Defendants,

    v.

ATHLETIC PROPULSION LABS, LLC,

              Defendant/ Counter Claimant.

No. 3:16-cv-00415-HZ

OPINION & ORDER

Charles H. Hooker, III
R. Charles Henn, Jr.
Kilpatrick Townsend & Stockton, LLP
1100 Peachtree St., Suite 2800
Atlanta, GA 30309

Stephen M. Feldman
Perkins Coie, LLP
1120 NW Couch St., 10th Floor
Portland, OR 97209

       Attorneys for Plaintiff

A. Louis Dorny
Richard P. Sybert
Gordon & Rees LLP
1001 SW 5th Ave., Suite 1100
Portland, OR 97204

David W. Cramer
Martin Bischoff Templeton Langslet & Hoffman
888 SW Fifth Ave., Suite 900
Portland, OR 97204

     Attorneys for Defendant

HERNÁNDEZ, District Judge:

     Plaintiffs adidas America, Inc. and adidas AG (collectively, "adidas") allege claims of trademark infringement, unfair competition, trademark dilution, and deceptive trade practices against Defendant Athletic Propulsion Labs, LLC ("APL"). APL moves to transfer venue to the Southern District of California. Because the multi-factor analysis which guides the Court's decision to transfer venue is essentially balanced between the parties, the Court defers to adidas's choice of venue. Accordingly, APL's motion is denied.

## BACKGROUND

     adidas AG is a German company. Compl. ¶ 4, ECF 1. adidas America, Inc. is a Delaware corporation with its principal place of business in Portland, Oregon. Id. at ¶ 5. adidas America directs all U.S.-based operations on behalf of adidas AG, including sales, brand marketing, product marketing, product design, public relations, distribution, enforcement, and licensing of and for adidas-branded merchandise. Id.

     APL is a California company with its principal place of business in Beverly Hills, California. Id. at ¶ 6. APL is a small company with ten employees and two locations within Los Angeles County. Goldston Decl. ¶ 3, ECF 14. All of APL's products, product ideas, and intellectual property are created and developed in southern California. Id. at ¶ 4.

adidas manufactures footwear, among other products. Over sixty years ago, adidas began placing three parallel stripes on its athletic shoes. Compl. ¶ 7. This trademarked "Three Stripe-Mark" has come to signify the adidas brand. Id. at ¶¶ 10-11. The essence of adidas's allegations in this case is that APL is designing, manufacturing, marketing, and selling footwear that "bears confusingly similar imitations of adidas's Three-Stripe Mark." Id. at ¶ 25. Specifically, adidas contends that APL has created footwear bearing four stripes in order to trade on the goodwill associated with adidas's Three-Stripe Mark. Id. at ¶ 32. adidas alleges APL's actions have diluted adidas's Three-Stripe Mark and caused adidas substantial injury. Id. at ¶¶ 35-62.

adidas brings the following claims against APL: (1) federal trademark infringement, in violation of 15 U.S.C.§§ 1114 and 1125(a); (2) federal unfair competition in violation of 15 U.S.C. § 1125(a); (3) unfair and deceptive trade practices, in violation of the statutes of several states[1]; (4) common law trademark infringement and unfair competition; (5) federal trademark dilution, in violation of 15 U.S.C. § 1125(c); and (6) state trademark dilution, in violation of the statutes of several states.[2]

## STANDARDS

A motion to transfer venue is governed by 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where the action might have been brought[.]"  The purpose of the 28 U.S.C. § 1404(a) is to "prevent the waste of time, energy and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and

---

[1] The states include California, Colorado, Delaware, Georgia, Hawaii, Illinois, Maine, Minnesota, Nebraska, New Mexico, New York, Ohio, and Oklahoma. Compl. ¶ 47.
[2] The states include Oregon, Alabama, Alaska, Arizona, Arkansas, California, Connecticut, Delaware, Florida, Georgia, Hawaii, Idaho, Illinois, Iowa, Indiana, Kansas, Louisiana, Maine, Massachusetts, Minnesota, Mississippi, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, Pennsylvania, Rhode Island, Tennessee, Texas, Utah, Washington, West Virginia, and Wyoming. Compl. ¶ 62.

3 - OPINION & ORDER

expense." Van Dusen v. Barrack, 376 U.S. 612, 616 (1964) (internal citation and quotation marks omitted).

A motion to transfer lies within the broad discretion of the district court and must be determined on a case-by-case basis. See Jones v. GNC Franchising, Inc., 211 F.3d 495, 498 (9th Cir. 2000). However, the burden is on the moving party to demonstrate that the balance of conveniences favoring the transfer is high. The defendant must make "a clear showing of facts which . . . establish such oppression and vexation of a defendant as to be out of proportion to plaintiff's convenience, which may be shown to be slight or nonexistent." Dole Food Co. v. Watts, 303 F.3d 1104, 1118 (9th Cir. 2002).

Courts employ a two-step analysis when determining whether transfer is proper. First, a court must ask "whether the transferee district was one in which the action might have been brought by the plaintiff." Hoffman v. Blaski, 363 U.S. 335, 343–44 (1960). Second, if the moving party has made this threshold showing, courts may consider "individualized, case-by-case consideration[s] of convenience and fairness." Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988).

## DISCUSSION

APL moves to transfer venue to the Southern District of California. It is undisputed that this case could have been brought in that district; therefore, the Court considers the issues of convenience and fairness.[3]

The Ninth Circuit has identified a number of public and private interest factors that a district court may consider. See Tuazon v. R.J. Reynolds Tobacco Co., 433 F.3d 1163, 1180 (9th

---

[3] In its reply brief, APL raises evidentiary objections to adidas's submission of the declaration of Charles H. Hooker III and its supporting exhibit. See Hooker Decl., ECF 23. The Court did not consider Mr. Hooker's declaration or the supporting exhibit in reaching its decision. Accordingly, there is no need to rule on APL's evidentiary objections.

Cir. 2006) ("Even when an adequate alternative forum exists, we will not disturb the plaintiff's original choice of forum unless the private interest and the public interest factors strongly favor dismissal.") (internal quotation marks and citation omitted). This Court may consider: (1) the plaintiff's choice of forum, (2) the parties' contacts with the forum, (3) convenience to the parties, (4) convenience to the witnesses, (5) availability of compulsory process for non-party witnesses, (6) ease of access to evidence, (7) differences in the costs of litigation in the two forums, (8) familiarity of each forum with the applicable law, (9) local interest in the controversy, and (10) the relative court congestion and time of trial in each forum. Jones, 211 F.3d at 498 (citing Stewart, 487 U.S. at 29–31); Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986); Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, No. 3:15-CV-00064-HZ, 2015 WL 3986148, at *5 (D. Or. June 29, 2015)[4].

I.    Plaintiff's choice of forum

        The parties' primary dispute centers on the importance of adidas's choice of forum. While APL acknowledges in its motion to transfer venue that adidas's choice of forum disfavors transfer, APL completely changes tack in its reply, arguing that adidas's choice of forum "is not entitled to great deference" because adidas America lacks standing and adidas AG, a foreign corporation, "is the plaintiff that counts." Def.'s Reply 4, ECF 29. The Court allowed adidas to respond to address the standing argument raised for the first time in APL's reply. See Order, June 22, 2016, ECF 34. Subsequently, APL filed an additional response, which this Court considered.

        The Ninth Circuit Court of Appeals has explained:

---

[4] APL also urges the Court to consider "enforceability of a judgment" as a factor. Def.'s Mot. 10, ECF 13. However, APL cites no controlling authority that identifies this factor as relevant in a § 1404 analysis. The Court declines to analyze this as a separate factor. However, even if it did, the Court's conclusion to deny the motion to transfer would not change.

> To establish standing to sue for trademark infringement under the Lanham Act, a plaintiff must show that he or she is either (1) the owner of a federal mark registration, (2) the owner of an unregistered mark, or (3) a nonowner with a cognizable interest in the allegedly infringed trademark. See 15 U.S.C. §§ 1114(1), 1125(a); 5 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition §§ 27:20–21, 32:3, 32:12 (4th ed. 2008) (noting that standing to sue for trademark infringement under the Lanham Act extends to owners of registered and unregistered marks, and nonowners with a protectable interest in the mark); see also Nat'l Licensing Ass'n, LLC v. Inland Joseph Fruit Co., 361 F. Supp. 2d 1244, 1256 (E.D. Wash. 2004) ("[T]o maintain a [claim under § 1125(a)], the plaintiff must show that it has a commercial interest in the allegedly misused mark that is 'likely to be damaged.'" (citing Waits v. Frito–Lay, Inc., 978 F.2d 1093, 1109 (9th Cir. 1992))).

Halicki Films, LLC v. Sanderson Sales & Mktg., 547 F.3d 1213, 1225-26 (9th Cir. 2008).

APL argues that adidas America lacks standing to sue for federal trademark infringement because it is merely a non-exclusive licensee of the trademarks whose value is held by adidas AG. APL cites various cases for the proposition that "[n]on-exclusive licensees lack standing to sue for infringement because they lack the requisite commercial interest in the mark." Def.'s Reply 5, ECF 29.

APL's argument fails. APL only addresses adidas's trademark infringement claim, even though adidas brings claims of unfair competition and trademark dilution as well. APL relies on cases and principles of patent law and fails to address § 43(a) of the Lanham Act, which permits a broader class of plaintiffs standing than § 32(a). Compare 15 U.S.C. § 1125(a) with 15 U.S.C. § 1114(1). See also Nat'l Licensing, 361 F. Supp. 2d at 1256 ("Where a plaintiff might lack standing under § 32, a plaintiff may yet have standing to bring an action under § 43(a)."); Murphy v. Provident Mutual Life Ins. Co., 756 F. Supp. 83, 86 (D. Conn.) ("[T]he question of ownership is immaterial to standing under § 43(a), since standing may lie with mere users of trademarks."), aff'd, 923 F.2d 923 (2d Cir. 1990); Silverstar Enters., Inc. v. Aday, 537 F. Supp. 236, 241 (S.D.N.Y. 1982) (holding that because § 43 is broader than § 32, users of trademarks who are not owners of the marks might have standing).

The case APL relies on most heavily, adidas AG v. Under Armour, Inc., No. CV 14-130-GMS, 2015 WL 3764829, at *1 (D. Del. June 15, 2015) only discusses standing in a patent infringement lawsuit. The sole case cited by APL that addresses § 43(a) standing in a trademark case found that a plaintiff, Visa U.S.A., lacked standing to sue because the license agreement between Visa U.S.A. and Visa International "specifically and expressly" forbade the litigation of the VISA marks by Visa U.S.A. Visa U.S.A. Inc. v. First Data Corp., No. C 02-01786 JSW, 2005 WL 6271242, at *5 (N.D. Cal. Aug. 16, 2005). The Court is unaware of any such license agreement in this case. Therefore, contrary to APL's assertion, so long as adidas America can show that it has a commercial interest in the allegedly misused mark that is likely to be damaged, then adidas America may have standing. Id.

APL also makes much of the fact that adidas America is a non-exclusive licensee. However, APL fails to cite any authority for the proposition that a non-exclusive licensee necessarily lacks standing under § 43(a). As discussed above, Visa U.S.A. Inc. did not hold that a non-exclusive licensee, in the absence of a license agreement forbidding that licensee from engaging in litigation, lacked standing. In fact, courts have found trademark licensees to have §43(a) standing, even when those licensees are non-exclusive. See, e.g., Shell Co. v. Los Frailes Serv. Station, Inc., 596 F. Supp. 2d 193, 203 (D.P.R. 2008), aff'd sub nom. The Shell Co. (Puerto Rico) v. Los Frailes Serv. Station, Inc., 605 F.3d 10 (1st Cir. 2010) ("Courts have allowed licensees (exclusive or nonexclusive) . . . to bring claims pursuant to section 1125(1)."); Quabaug Rubber Co. v. Fabiano Shoe Co., 567 F.2d 154, 159-60 (1st Cir. 1977) (dismissing plaintiff's claims under § 32 because plaintiff was not a "registrant" or "exclusive licensee" but allowing plaintiff's claim to proceed under § 43).

In its complaint, adidas asserts that adidas America "directs all U.S.-based operations on behalf of adidas AG, including sales, brand marketing, product marketing, product design, public relations, distribution, enforcement, and licensing of and for ADIDAS-branded merchandise, including goods bearing the distinctive Three-Stripe Mark." Compl. ¶ 5; see also Vanderhoff Decl. ¶ 3, ECF 24. adidas America is a licensee of the Three-Stripe Mark and contends that it "has been and continues to be damaged by [APL's] infringement of the Three-Stripe Mark." Second Vanderhoff Decl. ¶¶ 3-4, ECF 36. The Court finds that, at this stage of the litigation[5] and without any further evidence presented, adidas sufficiently demonstrates that adidas America has standing to sue under § 43 of the Lanham Act.

The Court's conclusion that adidas America is a proper plaintiff compels the Court to give substantial deference to adidas's choice of the District of Oregon. Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255 (1981) ("[T]here is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum."); see also Decker Coal, 805 F.2d at 843 ("The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum."); Adidas Am., Inc. v. Cougar Sport, Inc., No. 3:15-CV-01856-SI, 2016 WL 1054581, at *10 (D. Or. Mar. 14, 2016) (holding that because adidas had its United States headquarters and principal place of business in Oregon, adidas's choice of forum was given "great weight").

II.    Cost of litigation and convenience to the parties and witnesses

Each party argues that most of the witnesses are located in its preferred venue. Additionally, APL argues that this Court should consider the financial disparity between the

---

[5] APL has not moved to dismiss adidas America for lack of standing.

parties in light of the heavy burden APL will face if it has to pay for its employees to travel to trial in Oregon.

Convenience of witnesses is often the most important factor in determining whether or not to transfer a case. Partney Const., Inc. v. Ducks Unlimited, Inc., No. CIV. 08-574-SU, 2008 WL 4838849, at *3 (D. Or. Nov. 3, 2008) (citation omitted); see also Cougar Sport, 2016 WL 1054581, at *11 ("The convenience of witnesses, particularly nonparty witnesses important to the resolution of the case, is often cited as the most significant factor in a ruling on a motion to transfer.") (citing 15 Charles Alan Wright and Arthur R. Miller, Federal Practice & Procedure § 3851 (4th ed. 2015)). The "convenience of the witnesses" factor takes into account the convenience to both party and non-party witnesses; however, courts give more consideration to non-party witnesses, as opposed to witnesses who are employees of a party to the litigation. Id. The court considers not only the number of witnesses located in the respective districts, but also the nature and quality of their testimony, as it relates to the issues in the case. Id.

APL fails to identify any specific witness who will be called to testify. Instead, APL relies on the general assertion that all of APL's employees work and reside in southern California. Goldston Decl. ¶ 3, ECF 14. Furthermore, non-party witnesses including employees from LA Gear, Skechers, K-Swiss, and Asics, are located in southern California. Id. at ¶ 14. APL contends that such non-party witnesses may be called as witnesses related to trademark confusion and that, if APL is unable to require them to appear in Oregon, APL would be substantially prejudiced. APL argues that only adidas America is located in Oregon and, therefore, witnesses for adidas AG will have to travel internationally whether the trial is in Oregon or California.

9 - OPINION & ORDER

In contrast, adidas identifies eight witnesses who are likely to testify at trial. Vanderhoff Decl. ¶¶ 7-14, ECF 24. All of adidas's witnesses are employed and live in Oregon. Id. adidas also points out that APL's examples of third-party footwear manufacturers represent only a few of the many shoe brands headquartered across the United States and do not include companies such as Nike and Columbia Sportswear in Oregon.

In sum, both parties and their witnesses would be inconvenienced if this case is heard in the other's preferred forum. However, this factor weighs slightly in favor of adidas because it is able to identify with specificity at least eight likely witnesses and the nature of their testimony. Not only does APL fail to identify specific party witnesses, but APL fails to support its assertions regarding the importance or likelihood of testimony from hypothetical non-party witnesses. APL's contention that unwilling witnesses are more easily compelled to testify in the Central District of California fails due to the same lack of supporting evidence or specificity.

As to the relative financial disparity between the parties, while the Court acknowledges that APL appears to have far fewer resources, the Court declines to transfer venue merely to shift the financial burden to adidas. See Buckman v. Quantum Energy Partners IV, LP, No. 07-CV-1471-BR, 2008 WL 2235234, at *10-11 (D. Or. May 29, 2008), on reh'g, No. 07-CV-1471-BR, 2009 WL 4825914 (D. Or. Dec. 8, 2009) ("Merely shifting rather than eliminating the inconvenience is not a grounds for transfer of venue.") (citing Decker Coal, 805 F.2d at 843). APL presents no evidence or argument that the actual costs of litigation would be lower in the Central District of California.

III. Remaining factors

The remaining factors are neutral. Both this Court and the Central District of California are equally able to adjudicate the claims brought in this case. As APL concedes, adidas's claims

are primarily based upon federal law. There is only one state law claim brought by adidas that invokes California law (along with the law from twelve other states) and not Oregon law. This does not tip the scales in favor of one party or the other.

Similarly, the factor of relative docket congestion and time to trial is neutral. While each side cites statistics purporting to show the congestion of dockets in each district, the pertinent issue is whether a trial will be speedier in the Central District of California. See Gates Learjet Corp. v. Jensen, 743 F.2d 1325, 1337 (9th Cir. 1984) ("The real issue is not whether a dismissal will reduce a court's congestion but whether a trial may be speedier in another court because of its less crowded docket."). The difference in median time from filing to trial between the District of Oregon and the Central District of California is not significant. Sybert Decl. Ex. B at 21, ECF 15 (presenting data demonstrating that the median time in civil cases from filing to trial is 21.1 months in the Central District of California and 21.8 months in the District of Oregon); see also Wolfe v. The RV Factory LLC, No. 3:15-CV-02424-SI, 2016 WL 1117425, at *3 (D. Or. Mar. 22, 2016) (finding a delay of nine months to only weigh "slightly" in the transfer analysis and noting that this factor is the most speculative because case-disposition statistics provide only a generalized snapshot of court congestion).

As to APL's contacts with Oregon, the fact that a small percentage of APL's sales are made to buyers in Oregon does not weigh in either party's favor for the purposes of resolving this motion. See In re TS Tech USA, 551 F.3d at 1321 (Fed. Cir. 2008) (rejecting the argument that a forum had a "substantial interest" in having the case tried locally because several vehicles with the allegedly infringing headrest element were sold there); Columbia Sportswear, 2015 WL 3986148, at *5. The Court similarly holds that the "local interest in the controversy" factor is

neutral because both parties are headquartered in their preferred forum and both contribute to their respective local economies as employers.

Finally, the Court considers the parties' arguments as to documents and physical evidence and concludes that the factor is neutral. APL urges the Court to transfer this case because most of its evidence is located in southern California. All of APL's products are stored in southern California until they are shipped.  Goldston Decl. ¶¶ 5-6, ECF 14. APL argues that many of its shoes will need to be transported physically to the trial venue and that the cost of transport will strain APL's financial resources. In addition, all of APL's written materials and documents regarding its products were created and are located in southern California. Id. Finally, APL argues that if it is necessary to inspect the premises, design facilities, or actual inventory of APL, such inspection would take place in Los Angeles County.

adidas responds that its evidence is located in Oregon. adidas contends it maintains "an entire room full of documents and other materials related to adidas's Three-Stripe Mark" in the Portland, Oregon office of its counsel, Perkins Coie. Feldman Decl. ¶ 2, ECF 25. However, adidas does not argue that any documents or materials relevant to this particular case are necessarily located in this Portland room.

The Court declines to give this factor much weight in light of technological advances in document storage and retrieval and the lack of a clear need for inspection of APL's premises. However, the Court carefully considered the parties' arguments and concludes that the factor is neutral. See In re TS Tech USA Corp., 551 F.3d 1315, 1321 (Fed. Cir. 2008) (instructing district courts not to render this factor superfluous in light of technological developments).

///

IV.    Summary

Balancing all of the factors above, most of which are neutral, the Court finds that APL has failed to make a showing that would overcome the deference awarded to adidas's choice to litigate this matter in its home forum.

## CONCLUSION

For the reasons stated, the Court denies Defendant APL's motion to change or transfer venue [13].

IT IS SO ORDERED.

Dated this _____18_____ day of _____July_____, 2016.


_____
MARCO A. HERNÁNDEZ
United States District Judge